**Candido PACHECO, Jr., Appellant,**

**v.**

**ADVERTISERS LITHOGRAPHING, INC., and Courtney Business Enterprises, Inc., Appellees.**

**No. 80–1812.**

United States Court of Appeals, Eighth Circuit.

Submitted June 17, 1981.

Decided Aug. 19, 1981.

John M. Lilla, argued, Jack T. Bangert, Jackson & Sherman, P.C., Kansas City, Mo., for appellees Advertisers Lithographing, Inc. and Courtney Business Enterprises, Inc.

Loyd E. Owen, Jr., argued, Stephen B. Sutton, Gage & Tucker, Kansas City, Mo., for appellees.

Louis J. Wade, argued, Ronald J. Stites, Koenigsdorf, Kusnetzky & Wyrsch, Kansas City, Mo., for appellant Candido Pacheco, Jr.

Before McMILLIAN and ARNOLD, Circuit Judges, and HANSON,* Senior District Judge.

ARNOLD, Circuit Judge.

Candido Pacheco filed a three-count complaint against Advertisers Lithographing, Inc., alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, and the Missouri Service Letter Statute, Mo.Ann.Stat. § 290.140. The Title VII count was dismissed before trial and is not at issue here. The District Court [1] granted defendant's motion for summary judgment on the service-letter statute, and the § 1981 count was tried to the court on May 21 and 22, 1980. Pacheco's theory at trial was that he was not promoted and was suspended from work because he was a Mexican-American. The court found otherwise and entered judgment in favor of defendant on July 29, 1980. We affirm.

I.

Pacheco was hired by Advertisers Lithographing, Inc., in November of 1971 as a small-press operator. It was stipulated that large-press operator is the next level of work above small-press operator. Pacheco was hired by Mrs. Billie Courtney, vice-president of the company. She continued

---

* The Hon. William C. Hanson, Senior Judge, United States District Court for the Northern and Southern Districts of Iowa, sitting by designation.

1. The Hon. John W. Oliver, Chief Judge, United States District Court for the Western District of Missouri.

to supervise him and the other shop employees for the five years he worked there. Pacheco received periodic raises during his employment.

While working at Advertisers, Pacheco expressed an interest in becoming a large-press operator, a position which paid more money. One vacancy occurred for a large-press operator during this period, and the position was filled by Gene Thompson, a white employee.

On September 26, 1975, Pacheco and Mrs. Courtney had a heated argument during which he accused her of racial prejudice against him. Pacheco made what Mrs. Courtney perceived to be a threat to her personally or to the company when he said: "If I ever leave this place you'll pay for it." Mrs. Courtney returned to her office and wrote a letter to Pacheco telling him that he was suspended for one month without pay because of the threat. She told him that his feelings that he was being threatened in a discriminatory manner were unfounded and that his heritage had nothing to do with her decision.

Soon after the suspension, James Carter, Pacheco's immediate supervisor, and Jack Courtney, the company president, told Pacheco they would intercede with Mrs. Courtney on his behalf to have the suspension reduced. He refused their assistance. On October 1, 1975, Pacheco wrote the following letter to Mrs. Courtney:

Dear Mrs. Courtney:

According to our conversations and your letter of September 26, 1975, you have suspended me for one month without pay. You have attempted to prevent me from seeking employment.

Because of my personal situation I must work. Therefore, I am formally requesting that you send me a letter setting forth the nature of my employment, the dates of my employment, the cause of this "suspension" and your intentions insofar as discharge are concerned.

I shall appreciate your prompt attention to this request.

Mrs. Courtney responded by letter on October 6, 1975, stating that her earlier letter answered all of his questions. A postscript to her letter stated that "Your position is Press Operator, and your [sic] have been working with this company since November 12, 1971."

Within three weeks after his suspension, Pacheco accepted another job for more money than he had been making at defendant's print shop.

## II.

■ The district court found that Pacheco failed to establish a prima facie case of racial discrimination based upon disparate treatment under 42 U.S.C. § 1981. In order to prove his prima facie case, in the present context, a plaintiff must show that he is a member of a minority group, that he was qualified for the position which he was seeking, that he was rejected for the position, and that the employer continued to seek applicants for the position. The record supports the trial court's finding that Pacheco did not meet his burden of proving that he was qualified for the position of large-press operator, one of the elements of his prima facie case. Indeed, Pacheco testified at trial that he would have to be trained and was not presently qualified to operate the large press. He asks us to overlook this fact, however, and asserts that Gene Thompson, who was hired for the position, was no better qualified then he. This assertion is contrary to the evidence introduced at trial. Thompson did not need to be trained on the large press after coming to work for defendant. After a brief period of familiarization with the type of large press used by defendant, he was placed in full charge of the large-press operation.

■ The District Court further found that, assuming that Pacheco had made out a prima facie case, defendant had produced evidence that Pacheco was not made large-press operator for a legitimate, nondiscriminatory reason. After a prima facie case has been established, the defendant must "clearly set forth, through the introduction of admissible evidence, the reasons for the

plaintiff's rejection. The explanation provided must be legally sufficient to justify a judgment for the defendant." *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 255, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981). The District Court found that Thompson's previous training and experience on the large press were legitimate, nondiscriminatory reasons for hiring him, given the company's need for a large-press operator who could take charge and meet printing deadlines already established. These findings are not clearly erroneous.

■ Pacheco also claims he was discriminated against when he was suspended after his argument with Mrs. Courtney on September 26, 1975. The District Court permissibly found that no showing of disparate treatment had been made. Although heated arguments had occurred before between Mrs. Courtney and other employees which had not resulted in suspensions, the testimony and Mrs. Courtney's letter show that Pacheco was suspended because of his threat to Mrs. Courtney, not merely because they argued. There was no evidence that other employees had threatened Mrs. Courtney and not been suspended. We see no error in the District Court's conclusion on this issue.

## III.

■ Pacheco cites as error the District Court's granting of defendant's motion for summary judgment on count III of his complaint, brought under Mo.Ann.Stat. § 290.-140, commonly called the Missouri Service Letter Statute. The single issue to be resolved is whether there was a genuine issue of material fact as to whether Pacheco had either resigned or been discharged from his job on October 1, 1975, when he wrote Mrs. Courtney requesting a service letter.

The statute states in pertinent part:

Whenever any employee of any corporation doing business in this state shall be discharged or voluntarily quit the service of such corporation, it shall be the duty of the superintendent or manager of said corporation, upon the written request of such employee to him ... to issue to such employee a letter ... setting forth the nature and character of service rendered by such employee ... and the duration thereof, and truly stating for what cause, if any, such employee has quit such service.

The District Court held, and the plaintiff concedes, that a corporation has no obligation to provide a letter until the employee has been discharged or has quit. The Court concluded, based on the correspondence between Mrs. Courtney and Pacheco, that he had not been discharged or voluntarily quit as of October 1, 1975, and that his letter of that date, therefore, could not be considered a written request for a service letter under the statute.

Mrs. Courtney had written Pacheco on the day of the argument that:

Your conduct is certainly an example which I do not care to subject the other personnel to as being right and acceptable, therefore, your employment is being suspended for one month.

In Pacheco's letter of October 1 he said:

According to our conversations and your letter of September 26, 1975 you have suspended me for one month without pay.

In her answer to Pacheco's letter of October 1st, Mrs. Courtney wrote: "Your position is Press Operator, and your [sic] have been working with this company since November 12, 1971."

Pacheco claims that, if he had not been fired, then he had quit his employment as of October 1, 1975, because he was looking for another job and could not afford to be out of work for a month. His letter to Mrs. Courtney, however, does not support that conclusion. In the letter, quoted above, he acknowledges his one-month suspension, and no mention is made of resignation. His subjective intent to resign (assuming he did so intend) was insufficient as a matter of law to bring him within the statute, because it was never communicated to his employer. It is also apparent that he had not been fired, since Mrs. Courtney's answer to his letter states that his position "*is*

Press Operator" (emphasis added) and that he *has* been working with the company since 1971.

Summary judgment is only to be granted when a party has established a right to judgment beyond genuine controversy. *Inland Oil & Transport Co. v. United States*, 600 F.2d 725, 727 (8th Cir. 1979). The district court's duty is to review the facts in the light most favorable to the party opposing the motion and give that party the benefit of all reasonable inferences to be drawn from the evidence. *Id.* at 727–28. In light of the undisputed record in this case, contained in the letters written by plaintiff and Mrs. Courtney, we hold that the District Court did not err in holding that no genuine issue of material fact remained on the issue of the Missouri Service Letter Statute.

Affirmed.